UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL FRANCISCO | : |
| | : |
| vs. | : CR 04-100-ML |
| | : |
| UNITED STATES OF AMERICA | : |

**MEMORANDUM AND ORDER**

Mary M. Lisi, Chief United States District Judge.

Joel Francisco has filed a *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 in the above proceeding. For the reasons that follow, that motion is denied.

BACKGROUND AND TRAVEL[1]

A. Underlying Criminal Case

In October 2004 Francisco was indicted on two counts of drug offense charges: possession with intent to distribute in excess of five hundred grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count One); and possession with intent to distribute in excess of fifty grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count Two).[2] Francisco was represented by Attorney Damon M. D'Ambrosio for all pertinent proceedings in this Court.

Prior to trial, Francisco's counsel presented him with a proposed plea agreement under which the Government would include only one of his prior drug offenses in any information it filed to

---

[1] The background facts are taken from the records in this case and from evidence submitted at the evidentiary hearing conducted by this Court on January 5, 2010.

[2] Francisco was also named in three other indictments, along with a number of other individuals whom he was alleged to have supervised and directed in connection with his drug transactions – and all of whom pled guilty. See e.g. United States v. Jusino, CR 04-102-ML. There is no need to further discuss these parallel prosecutions herein.

establish prior offenses under 21 U.S.C. § 851 -- resulting in a potential sentence of 20 years to life imprisonment for the Count Two offense and 10 years to life imprisonment for the Count One offense -- and would recommend a sentence at the low end of that penalty range. (See Government's Response to Defendant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 18 U.S.C. §2255 ["Gov't Response"] at 8.)[3]  Francisco rejected the proposed plea agreement. The plea discussions between Francisco and Attorney D'Ambrosio are further described, infra.

One week before trial the Government filed a § 851 information naming two prior drug convictions by Francisco.[4] The § 851 information expressly set forth the enhanced penalties for the offenses charged: 10 years to life imprisonment on Count One and a mandatory term of life imprisonment without release on Count Two.[5] After a three-day jury trial Francisco was convicted on both counts.

The presentence report (PSR) prepared by the Probation Office calculated a Guideline range of 360 months to life imprisonment for the Count One offense, based on a total offense level of 38 and a criminal history category VI, and a restricted guideline range of life imprisonment for the Count Two offense, in view of the applicable mandatory minimum sentence of life imprisonment

---

[3] In their respective submissions the parties disagree as to what sentence the Government would have recommended under the proposed plea agreement (see Pet. Reply at 1 [21 years] and Gov't Response at 8 [30 years]), and the issue was not resolved at the evidentiary hearing . This issue, however, does not affect this Court's determination of Francisco's claims herein.

[4] The two prior drug convictions named were each for possession of cocaine; both were entered pursuant to counseled pleas in February 1998. See  Dkt. No. P2-1997-2714A, Providence County Superior Court; and Dkt. No. P2-1998-0402A, Providence County Superior Court. (See Gov't Response at 8 and Exh. 1 and 2.)

[5] See 21 U.S.C. § 841(b)(1)(A) (providing a mandatory life imprisonment for crack cocaine offense where defendant has two or more prior felony drug convictions), and § 841(b)(1)(B) (mandatory 10 years to life imprisonment for cocaine offense where defendant has at least one prior drug conviction). These provisions also set forth fines, but no fines are involved in this matter.

for that offense. (PSR, ¶¶ 51-52.) Francisco's counsel filed written objections to the PSR, challenging *inter alia* proposed certain upward adjustments for his leadership role and for obstruction of justice.

Prior to the sentencing hearing, Francisco's counsel initiated two applications for postconviction relief in the Rhode Island Superior Court, seeking to vacate the predicate drug convictions named in the Government's § 851 information. (See PM-2005-2639 and PM-2005-2640, Providence County Superior Court.) Both matters were pending at the time of Francisco's sentencing hearing in this Court and were subsequently denied in separate state court rulings. (See Gov't Response at 10.)

At the sentencing hearing held on September 19, 2005, counsel for Francisco argued a number of objections to the PSR, including his objections to the upward adjustments for leadership role obstruction of justice. (See Transcript of Sentencing Hearing conducted on September 19, 2005 ["Sent. Tr."] at 13-19, 42-46.) This Court rejected all objections and noted that in any event the overall length of Francisco's sentence was governed by the mandatory statutory penalty provided in §841(b)(1)(A). (Id. at 48-52.) Attorney D'Ambrosio also attempted to request that the Court exercise its discretion under United States v. Booker, 543 U.S. 220 (2005), to impose a sentence of less than life imprisonment as to Count 2. (Id. at 17-18, 18-19.) This Court denied the request, and subsequently observed that because the mandatory life sentence was statutory, it was unable to impose a lesser sentence on this Count. (Id. at 18-19, 59-60.) The Court then sentenced Francisco to life imprisonment without release as to the Count Two offense, and to 180 months, followed by eight years of supervised release, as to the Count One offense. The 180-month sentence was to run concurrently with the life imprisonment term imposed. (Id. at 58-59.)

Francisco appealed, represented by different counsel. The Court of Appeals rejected his arguments, including his argument that his two prior convictions used to enhance his sentence should have been submitted to a jury, and affirmed his conviction. See United States v. Francisco, Dkt. No. 05-2457 (October 2, 2006) (unpublished opinion). Further review was denied by the Supreme Court on June 11, 2007. Francisco v. United States, 551 U.S. 1123 (2006).

Francisco thereafter timely filed the instant motion to vacate. In his motion Francisco claims that his counsel provided ineffective assistance by: (1) failing to advise him in connection with plea discussions that his Count Two offense carried a penalty of mandatory life imprisonment; (2) failing to challenge Francisco's prior state convictions at his sentencing hearing; and (3) improperly waiving his right to testify at trial without his consent. The Government filed an opposition to the motion (Doc. #68), and Francisco filed a reply and subsequently filed a further memorandum in support of his motion to vacate.[6] This Court then scheduled an evidentiary hearing on Francisco's first and third claims see Order entered on March 17, 2009, and appointed counsel for Francisco.

B.    Evidentiary Hearing on § 2255 Claims

The evidentiary hearing was conducted on January 5, 2010, with Francisco represented by Attorney William Dimitri. At the outset of the hearing, Francisco withdrew his third claim -- that his counsel rendered ineffective assistance by waiving Francisco's right to testify at trial -- and this Court, after questioning Francisco directly and confirming his concurrence, deemed that claim waived. (See Transcript of Evidentiary Hearing conducted on January 5, 2010 ["Hrg. Tr."] at 4-5.)

---

[6] At the evidentiary hearing the attorney for the Government referred to two separate petitions filed by Francisco. (See e.g. Hrg. Tr. at 13-14.) However, the docket reflects only one §2255 motion to vacate (Doc. #59), together with supplemental filings made by Francisco in support of that motion, including his Reply to Government's Response filed on September 16, 2008 (Doc. #69) and his Brief in Support of Motion to Vacate, Set Aside or Correct Sentence, filed on January 7, 2009 (Doc. #70).

Accordingly, the hearing was limited to Francisco's first claim concerning his counsel's alleged failure to advise him that his Count Two offense carried a penalty of mandatory life imprisonment.

Both Francisco and his trial counsel, Attorney D'Ambrosio, testified at the hearing. Francisco testified that Attorney D'Ambrosio informed him that he faced a potential penalty of 10 years to life imprisonment and that the judge had discretion to impose a sentence of less than life imprisonment, and that based on this advice, he determined to go to trial. (Id. at 9-10.) He testified that Attorney D'Ambrosio presented a proposed plea agreement to him approximately one month before trial, which contemplated a possible guideline range of 20-30 years and a recommended sentence of 21 years. (Id. at 10.) Francisco stated that Attorney D'Ambrosio never told him prior to trial that he was facing a mandatory life imprisonment sentence and that if he had known of that fact, he would have accepted the plea agreement and pled guilty to his offenses. (Id. at 11-13.) On cross-examination Francisco acknowledged that he knew he had three other indictments pending against him (id. at 13, 26-27), that he became upset with the proposed plea agreement, and that he tore it up and rejected it. (Id. at 16-17.) Francisco also testified that notwithstanding his present claim, had he taken the stand at his trial, he would have testified that the drugs in the apartment were not his drugs and that other persons had full access to the apartment and to the drugs. (Id. at 18-21.)

Attorney D'Ambrosio testified that he presented the plea agreement to Francisco and that he was pleased that he had obtained a proposed plea agreement that avoided a mandatory life sentence. (Id. at 33, 35, 39.) In response to questions by this Court, he testified that he was aware of the mandatory life imprisonment penalty at the time he presented the plea agreement to Francisco and that in the course of presenting that agreement he informed Francisco that he was facing a mandatory life sentence. (Id. at 38-39, 49-50.) He also testified that he informed Francisco that a conviction on

any one of the four indictments pending against him could trigger the mandatory life sentence. (Id. at 35-36.) Attorney D'Ambrosio further testified that upon being presented with the proposed plea agreement, with its contemplated guideline range of 20-30 years, Francisco became angry and tore it up, stating that he did not intend to serve 20 years for his offenses. (Id. at 34-35.)

At the conclusion of the hearing, this Court provided both sides an opportunity to submit post-hearing memoranda and replies thereto. This Court has reviewed the post-hearing submissions of the parties, along with the papers filed in connection with Francisco's first and second claims, and this matter is ready for decision.

## DISCUSSION

Because Francisco has withdrawn his third claim regarding his counsel's alleged waiver of his right to testify at trial, that claim will be dismissed, and this Court will focus on his remaining two ineffective assistance claims.

A. Legal Principles

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1) That his counsel's performance fell below an objective standard of reasonableness; and

(2) [A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002).

In assessing the adequacy of counsel's performance, the Court looks to 'prevailing professional norms.' All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances.

Ramirez v. United States, 17 F.Supp.2d 63, 66 (D.R.I. 1998) (quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) and citing Strickland, 466 U.S. at 688). To satisfy the prejudice requirement under Strickland, a defendant must show a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. United States v. Theodore, 468 F.3d 52, 56 (1st Cir. 2006) (citing Strickland, 466 U.S. at 695).

With these principles in mind, this Court examines each of Francisco's claims in turn.

A.  Inaccurate Plea Advice

Francisco claims that his counsel failed to advise him accurately concerning the potential penalties for his drug offenses, and in particular that in view of his two prior drug convictions, he faced a statutory sentence of mandatory life imprisonment for his Count 2 offense. He contends that, based on his counsel's advice that the term of life imprisonment he faced was discretionary with the sentencing judge rather than mandatory, he decided against pleading guilty and instead went to trial. Based on the testimony submitted at the evidentiary hearing, this claim falls short.

In advising a defendant whether or not to accept a plea agreement and plead guilty, counsel "must give the client the benefit of counsel's professional advice on this crucial decision, including communicating to the defendant the terms of the plea offer in assessing the strengths and weaknesses of the case." Purdy v. United States, 208 F.3d 41, 44-45 (2d Cir. 2000)(internal quotations omitted). Information regarding the difference between the sentence exposure if a proposed plea agreement is or is not accepted is often "crucial to the decision whether to plead guilty." United States v. Day, 969 F.2d 39, 43 (3d Cir.1992).

An attorney's performance is deemed deficient when the advice a defendant received "was so incorrect and so insufficient that it undermined [the defendant's] ability to make an intelligent

decision about whether to accept the [plea] offer." Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting Day, 969 F.2d at 43 (3d Cir.1992)). However, an attorney's inaccurate prediction of his client's probable sentence, standing alone, will not satisfy the "prejudice" prong of the ineffective assistance test. See United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995) (counsel's inaccurate prediction about sentencing generally not sufficient to sustain claim of ineffective assistance), overruled on other grounds, 520 U.S. 751 (1997); Knight v. United States, 37 F.3d 769, 775 (1st Cir. 1994) (same).

The testimony of both Francisco and Attorney D'Ambrosio, noted above, was consistent on several points: (1) that Francisco was aware he faced a maximum potential sentence of life imprisonment; (2) that D'Ambrosio presented a proposed plea agreement to Francisco, which contemplated a potential guideline range of 20 to 30 years and pursuant to which the Government was willing to recommend a sentence at the lower end of that range;[7] and (3) that Francisco became angry at the idea of serving 20 or more years for his offenses and tore up the written plea agreement presented by Attorney D'Ambrosio.

The crucial point on which their respective testimony diverges is on whether Attorney D'Ambrosio informed Francisco at the time he presented the proposed plea agreement that he was facing a mandatory life imprisonment sentence for the Count 2 drug offense. If counsel failed to do so, his conduct would likely constitute objectively deficient performance. Francisco testified that his counsel told him he faced 10 years to life imprisonment and that this Court would have discretion to impose a lesser sentence than life imprisonment. (Id. at 9-11.) Attorney D'Ambrosio testified that

---

[7] No copy of the proposed plea agreement in question was available at the evidentiary hearing. This Court thus bases its findings as to the contents of the agreement, to the extent pertinent, on the testimony at the hearing.

although he could not recall the exact words he stated to Francisco at the time he presented the plea offer, he did inform Francisco that he faced a penalty of mandatory life imprisonment, and he advised Francisco that he was pleased to have obtained a plea agreement that avoided this result. (Id. at 38-39.)[8]

D'Ambrosio further testified that after the plea agreement had been rejected and he was preparing for trial, he discussed with Francisco the possibility, if Francisco were found guilty, of requesting the sentencing judge to exercise discretion under Booker and to impose a sentence that

---

[8] The pertinent testimony is as follows:

THE COURT:   Just a minute, Ms. Rogers. What's really pertinent here is the conversations in advance of trial. So let's go there.
You just said that, in response to a question about whether you noticed any impairments on behalf of the Defendant, you said something about you didn't know -- you didn't think he appreciated the gravity of the situation. You don't know whether it was a result of your inability to express it properly. What did you mean by that?
THE WITNESS:   Perhaps I wasn't as adamant, as forceful as I should have been.
THE COURT:   What exactly did you tell him?
THE WITNESS:   Judge, I don't recall. I can't affirmatively state what I exactly told him in that term. I do recall going over the plea agreement and telling him I was very gratified that there was not a mandatory life provision in it.
THE COURT:   Okay. What conversations did you have about the fact that there was a mandatory life term at play in this case?
THE WITNESS:   I believe we had numerous conversations regarding that before trial. My concern, obviously, was that that was in play. I don't recall when, where or the substantive conversations other than the fact that I did express that.
THE COURT:   When you say you expressed it, what did you tell him?
THE WITNESS:   I told him he was facing a mandatory life sentence and that any conviction on one of the four Indictments could trigger the same.

(Hrg. Tr. at 38-39.) Later in the proceedings, Attorney D'Ambrosio reiterated this:

THE COURT:   ... I have a question for you. Before you met with Mr. Francisco with the Government's plea agreement in hand, what was your understanding of the impact of his prior convictions and the charges he was facing in the Indictment that ultimately went to trial?
THE WITNESS:   That he would be facing a mandatory life sentence if convicted.
THE COURT:   When you say he would be facing a mandatory life sentence, what did you understand that to mean?
THE WITNESS:   That if he were to be convicted, he would be doing life imprisonment without the possibility of early release.

(Hrg. Tr. at 49-50.)

was less than life imprisonment -- but that this was an "argument of last refuge." (Id. at 39-40.) In fact, Attorney D'Ambrosio attempted to raise such an argument (albeit unsuccessfully) at Francisco's sentencing.

After hearing the testimony of and observing both witnesses, this Court finds Attorney D'Ambrosio's testimony to be credible -- and finds Francisco's testimony on this point to be contradictory and inherently unreliable[9] -- concerning what Attorney D'Ambrosio advised Francisco about the potential penalty he faced. This Court further finds that at the time he presented the plea agreement, Attorney D'Ambrosio accurately communicated to Francisco that he faced a potential mandatory life imprisonment penalty if he were found guilty of the drug offenses with which he was charged.

In his post-hearing submissions Francisco challenges Attorney D'Ambrosio's "hazy" recollection of events at the hearing as an indication that he did not adequately advise Francisco of the mandatory life sentence. (See Memorandum in Support of Defendant's Petition for Post Conviction Relief ["Pet. Post-Hearing Memo"] at 5-6 .) However, this Court notes that Attorney D'Ambrosio's testimony was definite on the crucial point that at the time he presented the plea agreement he was aware that Francisco faced a mandatory life sentence and that he communicated this fact to Francisco. (See fn. 8, supra.) The fact that he could not recall his exact words or the precise timing of his other communications with Francisco concerning the possibility of requesting discretionary sentencing under Booker does not negate this. See United States v. Kratsas, 102

---

[9] In discounting Francisco's testimony on this point, this Court considers not only that Francisco has a strong motivation, given his current life sentence, to testify falsely but also his testimony at the evidentiary hearing that had he been permitted to testify at trial, he would have denied that the drugs were his and that he attempted to bribe the police officers who arrested him, notwithstanding that he would have been willing to plead to a 20+-year sentence for his drug offenses. (Hrg. Tr. at 19-21.)

F.Supp.2d 320, 323-24 (D.Md. 2000), aff'd, 9 Fed.Appx. 107 (4th Cir. 2001) (counsel's admissions as to his shortcomings in representing defendant and the fact that he not have did not have independent recollection of plea negotiations, "in the court's view lends to his credibility").[10]

Francisco also argues that at the time he rejected the proposed plea agreement, his counsel should have taken a "sledgehammer" approach to emphasize to Francisco that he was facing a mandatory life sentence for his offense. (Pet. Post-Hearing Memo at 8.) This Court disagrees. Attorney D'Ambrosio testified that he informed Francisco of the mandatory life prison sentence prior to or at the time of presenting the plea agreement. While Attorney D'Ambrosio might have, as he himself observed in hindsight, been more forceful in communicating this fact to Francisco, this does not cause his performance to fall outside of "the wide range of reasonable professional assistance" that constitutes acceptable attorney performance, Strickland, 466 U.S. at 689, nor was it "so incorrect and so insufficient that it undermined [Francisco's] ability to make an intelligent decision about whether to accept the [plea] offer." Turner, 281 F.3d at 880(quoting Day, 969 F.2d at 43).

Francisco points to Attorney D'Ambrosio's suggestion that he could request this Court in its discretion to impose a sentence of less than life imprisonment -- and to counsel's attempt to make that request (albeit unsuccessfully) at Francisco's sentencing hearing -- as evidence that Francisco relied on this approach in rejecting the plea agreement. (See Hrg. Tr. at 9-12; Supplemental Memorandum in Support of Defendant's Motion to Vacate at 2-3.) However, while Attorney D'Ambrosio may have discussed this approach with Francisco prior to sentencing -- or even prior

---

[10] In Kratsas, defendant's successor counsel re-negotiated a plea agreement disposing of his drug offenses with a recommended five-year sentence, but defendant rejected it and was found guilty at trial. 102 F.Supp.2d at 322. The Government then filed a § 851 information charging defendant with two prior drug offenses, raising his maximum penalty to mandatory life imprisonment without release. The court found that successor counsel had adequately communicated the fact that if defendant went to trial, he faced a mandatory life imprisonment sentence in view of his two prior drug convictions. Id. at 323-25.

to trial -- this Court finds that this conversation did <u>not</u> occur prior to Francisco's rejection of the plea agreement. Rather, as Attorney D'Ambrosio testified, this approach was only made as an "argument of last refuge" or last resort (<u>id.</u> at 39) *after* Francisco had unequivocally rejected the proposed settlement agreement.[11]

---

[11] Attorney D'Ambrosio's testimony on this point was as follows:

> Q. Did you ever tell him that Booker and Blakely would not apply prior to trial?
> A. Prior to trial? I don't recall that.
> Q. You did argue at the sentencing to the Court that the Court had discretion to go below the statutory mandatory minimum of life. Why did you argue it at that time?
> A. I believed it was incumbent upon me. That was the argument of last refuge, I thought.
> Q. What do you mean by that?
> A. Because there was a mandatory provision for sentencing, I tried to make an argument that the Court had some form of discretion to avoid that mandatory provision. I didn't believe there was much else I could do at that point.
> Q. But you didn't make that argument or express that argument to Mr. Francisco prior to going to trial?
> A. This is fuzzy, but I may have -- after he rejected the plea agreement, I may have indicated that that would be the tack we would take if he were convicted. Whether that was before, during -- or during trial, I don't recall. *Since there was no plea agreement, that was, again, a fallback; and whether I expressed that to him before trial, I do not recall.*
> Q. *Well, did you express it to him in trying to persuade him to take the plea agreement with the Government?*
> A. *No. In trying to take the plea agreement?*
> Q. Yes.
> A. *No.*

(Hrg. Tr. 50-51.) (Emphasis added.) Later, Attorney D'Ambrosio testified:

> Q. I want to make sure of the time line with regard to your raising the issue of Booker in your argument of last resort, as you called it, Booker not making it mandatory that the Court impose a life sentence after conviction. You indicated you might have discussed it with Mr. Francisco before the trial?
> A. I may have, yes.
> Q. Is there any doubt in your mind, though, that you did not discuss it before his rejection of the plea agreement? Was it a factor or did you say -- in the discussions of whether he should take the 20-year-minimum plea agreement, had you raised the issue?
> A. I don't know why I would have, but I do not recall.
> Q. And when you say you don't know why you would have, would you explain that.
> A. Because *my concern was to secure a plea agreement that would have provided for a less-than-life term, and ultimately that was provided. I don't think my concerns with Booker would have kicked in at any time prior to the rejection because they would have been sentencing issues, in any event.*

(Hrg. Tr. 50-51.) (Emphasis added.)

-12-

The cases cited by Francisco are distinguishable and do not compel a different result. In Day v. United States, the Third Circuit found that counsel's failure, in the course of presenting a proposed plea agreement, to advise the defendant of the adverse impact of his career offender status on his potential sentence constituted objectively deficient conduct. 969 F.2d at 42-44. Here, by contrast, this Court has found that Attorney D'Ambrosio adequately communicated to Francisco that he faced a potential mandatory life sentence for his offenses in connection with either the instant indictments or the three other indictments pending against him. Likewise, Francisco's reliance on United States v. Wilson, 2009 WL 1028088 (D.Ore. April 16, 2009), is also misplaced. In Wilson the court found that counsel's alleged failure to properly advise the defendant concerning the availability of the safety valve and the existence of a potential two-level firearm enhancement deprived the defendant of sufficient information to make a reasonably informed decision regarding his plea agreement. Id. at *7-*8. This was not the case here, as this Court has found that Attorney D'Ambrosio timely advised Francisco concerning the potential mandatory life imprisonment penalty in attempting to persuade Francisco to accept the proposed plea agreement.

This Court has considered all of Francisco's remaining arguments concerning this claim and finds them to be without merit. Because counsel's performance was not objectively deficient, see Strickland, 466 U.S. at 687-88, this claim fails.

B.  Failure to Challenge Prior Convictions

Francisco further claims that his counsel was ineffective in failing to challenge at sentencing his two prior state court drug convictions that were the predicate for his enhanced sentence. The short answer to this claim is that prior to sentencing, Attorney D'Ambrosio did initiate two applications for postconviction relief in Providence County Superior Court challenging each of these convictions (see Francisco v. State, Docket Nos. P2-2005-2639 and P2-2005-2640), but both

13

applications were ultimately denied,[12] rendering this claim moot.

Moreover, even if the claim were not moot, it is doomed for several reasons. First, any challenge to these two convictions – each of which occurred in February 1998 (see Gov't Response at 8 and Exh. 1 and 2) – was precluded by the very terms of § 851, which provides that a defendant may not challenge prior convictions that occurred more than five years before the date of the §851 information. 21 U.S.C. § 851(e). In this case the § 851 information was filed in April 2005. Second, even apart from § 851, the law is well-established that a defendant may not collaterally challenge his counseled prior convictions at a subsequent federal sentencing hearing, even where those convictions are used to enhance the federal sentence. See Custis v. United States, 511 U.S. 485, 490 (2000); United States v. Burke, 67 F.3d 1 (1st Cir. 1995)(absent specific authorization, prior predicate conviction may not be collaterally attacked in subsequent federal sentencing preceding). Third, challenging Francisco's prior convictions in this Court, even if permitted, would have been counterproductive, given that applications for postconviction relief as to those convictions were pending in state court. The fact that those applications for postconviction relief were ultimately denied does not render counsel's performance deficient in this respect.

Thus, there was no deficient performance on the part of Attorney D'Ambrosio. Moreover, there was no prejudice in view of the state court's subsequent denial of his postconviction challenges to these predicate offenses. See Strickland, 466 U.S. at 692.

In short, this claim fails because it is moot and meritless.

---

[12] According to the Government, the State of Rhode Island objected to both applications and, after hearing argument and considering the merits of Francisco's claims, a state Superior Court Magistrate denied both applications on October 28, 2005, just over one month after Francisco's sentencing. (See Gov't Response at 10.)

## CONCLUSION

In view of the foregoing considerations, Francisco's motion to vacate under § 2255 is hereby DENIED and dismissed.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court hereby finds that this case is **not** appropriate for the issuance of a certificate of appealability (COA), because Francisco has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. §2253(c)(2).

Francisco is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See § 2255 Rule 11(a).

SO ORDERED:

_____
Mary M. Lisi
Chief United States District Judge
February 1, 2010